## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHSHORE MAINLAND SERVICES INC., *et al.*,[1] | ) | Case No. 15-11402 (KJC) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

### DECLARATION OF LAWRENCE Y. KWON IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

I, Lawrence Y. Kwon, hereby declare under penalty of perjury:

1.    I am a Managing Director in the Real Estate, Lodging and Gaming Group and founding member of the Recapitalization and Restructuring Group at Moelis & Company LLC ("Moelis"), proposed investment banker and financial advisor to Northshore Mainland Services Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in this Chapter 11 case.

2.    I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors and Debtors in Possession to Obtain Postpetition Financing, (II) Granting Liens and Super-Priority Claims, (III)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Northshore Mainland Services Inc. (9087); Baha Mar Enterprises Ltd.; Baha Mar Entertainment Ltd.; Baha Mar Land Holdings Ltd.; Baha Mar Leasing Company Ltd.; Baha Mar Ltd.; Baha Mar Operating Company Ltd.; Baha Mar Properties Ltd.; Baha Mar Sales Company Ltd.; Baha Mar Support Services Ltd.; BML Properties Ltd.; BMP Golf Ltd.; BMP Three Ltd.; Cable Beach Resorts Ltd.; and Riviera Golf Ventures Ltd.

*Authorizing use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "Motion"), filed contemporaneously herewith.

3.    Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the business, operations, and finances of the Debtors, the conduct of Moelis in rendering services to the Debtors, and information learned from my review of relevant documents and information supplied to me by or on behalf of the Debtors, its advisors, and other Moelis employees working directly with me or under my supervision, direction, or control. If called upon to testify, I would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of Moelis.

4.    I am familiar with the proposed DIP Facility[2], including, but not limited to, the terms of the DIP Facility as set forth in the DIP Term Sheet attached to the Motion.

## QUALIFICATIONS AND BACKGROUND

5.    Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 500 employees based in 15 offices in North and South America, Europe, the Middle East, Asia, and Australia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

---

[2] All terms used herein and not defined herein shall have the meanings ascribed to such terms in the Motion, as applicable.

2

6.      Moelis provides a broad range of corporate advice to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; and (d) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors in numerous cases, including: *In re XMH Corp. f/k/a Hartmarx Corp.*, No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 4, 2009); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Dec. 27, 2011); *In re Gen. Maritime Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); *In re Jackson Hewitt Tax Serv., Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. June 30, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010); *In re Almatis B.V.*, No. 10-12308 (MG) (Bankr. S.D.N.Y. June 9, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Mar. 17, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010); *In re Reader's Digest Ass'n Inc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 24, 2009); *In re NV Broad. LLC*,

3

No. 09-12473 (KG) (Bankr. D. Del. Aug. 5, 2009); *In re Fontainebleau Las Vegas Holdings, LLC*, No. 09-21481 (AJC) (Bankr. S.D. Fla. Nov. 25, 2009); *In re ION Media Networks Inc.*, No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 13, 2009); *In re JGW Holdco, LLC f/k/a J.G. Wentworth LLC*, No. 09-11731 (CSS) (Bankr. D. Del. June 16, 2009); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); *In re Dayton Superior Corp.*, No. 09-11351 (BLS) (Bankr. D. Del. May 18, 2009); *In re Idearc Inc.*, No. 09-31828 (BJH) (Bankr. N.D. Tex. May 27, 2009); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Mar. 18, 2009); *In re Old AII, Inc. f/k/a Aleris Int'l Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009); *In re Lyondell Chemical Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009).

7.    I hold a Bachelor of Arts degree in Economics and History from Tufts University. I hold Series 7 (General Securities Representative) and Series 63 (Uniform State Law) licenses. I have over 15 years of professional experience in both investment banking and management consulting.

8.    Since its inception in July 2008, the Recapitalization and Restructuring Group at Moelis has been mandated in over 100 restructuring transactions, many of which involve companies in the real estate, gaming, and lodging sectors, and many of which I have worked on, including the Fontainebleau Hotel and Resort in Miami beach, the Fontainebleau Resort & Casino in Las Vegas, W Hotel New York Union Square, and Stuyvesant Town Peter Cooper Village, a multi-family housing complex in Manhattan, among others. In addition, I have advised clients in the lodging and gaming sectors including Highgate Hotels, Aimbridge Hospitality, CityCenter, Gateway Casinos & Entertainment, and Kokusai Kogyo Holdings Co.

on mergers and acquisitions and capital raising activities.  Outside of the real estate and lodging sectors, I have advised clients on numerous restructuring transactions including Jackson Hewitt Tax Services, Inc., TOUSA Inc., and Sonic Automotive, Inc.  Throughout my investment banking career, I have advised clients on transactions with an aggregate value in excess of $40 billion across over 30 situations.

9.    Prior to joining Moelis in 2008, I worked at Jefferies & Company, Inc. ("Jefferies") from 2004 to 2008, most recently as a Vice President in the Recapitalization & Restructuring Group.  Jefferies is a global securities investment banking group with offices in 30 cities around the world.  While I was at Jefferies, I advised on a wide range of recapitalization and restructuring transactions including Foamex, Inc., Satelites Mexicanos, S.A. de C.V., and Merisant.  In addition to advising clients on restructuring transactions, I advised numerous clients on leveraged finance and mergers and acquisitions transactions.

10.    Prior to joining Jefferies, I was a management consultant at Accenture LLP for approximately 4 years where I specialized in supply chain and operations strategy consulting.

11.    I have taken part in various speaking engagements and education programs including Columbia CaseWorks at Columbia and business case study presentations at NYU's Stern School of Business, Tufts University, and the Wharton School at the University of Pennsylvania.

12.    The Debtors retained Moelis, effective June 5, 2015, to act as its financial advisor and investment banking advisor to assist the Debtors in connection with a potential restructuring.  My colleagues and I have worked closely with the Debtors' management and

5

other professionals retained by the Debtor, and have become acquainted with the Debtors' capital structure, financial condition, and business operations.

A.    **Solicitation and Negotiation of Terms of DIP Financing**

13.    Pursuant to the DIP Motion, I understand that the Debtors request authority to obtain a debtor-in-possession multiple draw term loan of up to $80 million, use cash collateral, and grant liens and superpriority administrative claims.

14.    In anticipation of the commencement of the chapter 11 cases and in light of the Debtors urgent need for financing in order to fund operating expenses, the Debtors identified their equity owner as the most likely source of postpetition financing, given the equity owner's vast knowledge of the assets, history with the Debtors, and substantial investments in the Debtors.  To that end, in mid-June 2015, the Debtors and their advisors began negotiations with the equity owner regarding debtor-in-possession financing. In the days that followed, the Debtors and equity owner negotiated in good faith the terms and conditions of the financing and the use of cash collateral.  These negotiations ultimately resulted in the DIP Facility for which the Debtors are seeking approval.

B.    **Terms of DIP Facility Are Reasonable Under the Circumstances**

15.    I believe that the agreement ultimately reached among the Debtors and the DIP Lenders with respect to the DIP Facility affords the Debtors liquidity with which to continue paying operating expenses in accordance with the DIP Budget prior to the Final Hearing and preserve value for their stakeholders during the restructuring process.

16.    In mid-June, shortly after Moelis was retained, the Debtors informed us that they faced serious constraints on their liquidity and would require financing within 2 weeks to continue business operations.  Under these circumstances, Moelis was unable to solicit third party lenders prior to a bankruptcy filing.  In my experience, it is highly unlikely that a third

6

party lender would have had sufficient time to conduct due diligence on the Project and provide DIP financing on an interim basis. Without the need for extensive time for due diligence, the DIP Lenders were able to negotiate and provide interim financing to the Debtors on reasonable terms under the circumstances that allow the Debtors to continue paying necessary business expenses during these cases in accordance with the DIP Budget, which is important for preserving the value of their assets.

17.    Thus, I believe that the terms of the DIP Facility are, on the whole, reasonable under the circumstances. Accordingly, I believe that entering into the DIP Facility is a valid and prudent exercise of the Debtors' sound business judgment.

18.    The Debtors and Moelis intend to market and seek alternative sources of financing between interim financing and the Final Hearing.

**C.    Need for Interim Relief**

19.    It is my understanding that the Debtors propose to use the proceeds of the DIP Facility to support the Debtors' operations in chapter 11 in accordance with the DIP Budget, including costs necessary to preserve the value of the Project. Accordingly, the DIP Facility will be used to fund the wages, salaries and benefits of the Debtors' employees, procure necessary goods and services (and maintain trade terms with the Debtors' vendors), finance the costs of these Chapter 11 Cases, and meet certain other working capital needs. Thus, the Debtors' access to the DIP Facility will facilitate their efforts to preserve value for their stakeholders through these cases. I believe that the interim relief sought by the Motion is both necessary and sufficient to fund the Debtors' operations in accordance with the DIP Budget, finance the administration of these chapter 11 estates, and prevent immediate and irreparable harm to the value of the Debtors' assets to the detriment of all stakeholders and other parties in interest.

DOCS_DE:200449.1 61131/001

20.     For the foregoing reasons, I believe that it is within the sound business judgment of the Debtors to enter into the DIP Facility and that the relief sought by the Motion is in the best interests of the Debtors' estates, stakeholders, and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  June 29, 2015

/s/ Lawrence Y. Kwon
Lawrence Y. Kwon
Moelis & Company LLC

8